# CIRCUIT COURT OF WASHINGTON COUNTY

Gardner

v.

Fore

March 24, 1999

Case No. CJ99-4 and 5

BY JUDGE CHARLES H. SMITH, JR.

This matter is before the court on appeal from the Washington County Juvenile and Domestic Relations Court. The court heard the matter on March 23, 1999, on a stipulation of the facts and arguments of counsel. The controversy here involves interpretation and application of the Uniform Child Custody Jurisdiction Act, § 20-125 *et seq.* of the Code.

The parties hereto were married in 1978, separated in 1995, and were divorced. Two children were born to the marriage, John R. Fore, II, and Jackson R. Fore, III, who are ten and six years of age, respectively. In December of 1996, an agreed order was entered awarding the parties joint custody of these children with the mother being the primary physical custodian. The father was granted extensive visitation. This order was entered in anticipation of the mother's move to North Carolina to follow her new husband's career move there. The father has remarried and remains a resident of this county.

On April 8, 1998, the mother filed a petition in Forsyth County, North Carolina, seeking a modification of the Virginia order. The father entered an appearance objecting to such action, and the North Carolina court declined to exercise the jurisdiction it obviously had, deferring instead to Virginia without prejudice to the mother.

In November of 1998, the mother filed her petition in the Washington County Juvenile and Domestic Relations Court requesting a transfer of all custody, visitation, and support matters to the North Carolina court. The court

awarded her the relief requested, except for support, and the father appealed. All parties concede that this court has jurisdiction.

Historically, almost universal disrespect for child custody decrees caused such decrees to be modifiable state to state and encouraged "child snatching" by parents and failure by non-custodial parents to return children after exercising visitation. The Uniform Child Custody Jurisdiction Act was adopted in an effort to put an end to this forum shopping and endless litigation. The intent of the Act is to avoid jurisdictional competition and conflicts with courts of other states, to promote cooperation with other courts, and to assure that litigation concerning child custody take place ordinarily in the forum with the most significant contacts with the child and his family and where the most substantial evidence is readily and conveniently available. The Act attempts to designate one court in the country to assume responsibility for custody decisions affecting a particular child. Sister states are discouraged from modifying such decrees unless the child and his family no longer have appreciable ties with the original forum states. Thus, North Carolina, it would appear, would be hard-pressed to exercise the jurisdiction it has acquired under the "home state" test unless this court declined to exercise its continuing jurisdiction.

The mother here argues that jurisdiction should be transferred not only because North Carolina now qualifies as the "home state" of the children but also because of the significant connection/substantial evidence test. She argues that the children have now resided in North Carolina for about three years; she and her new husband live there with their child; the children attend school there; their friends are there; their neighbors are there; this is where their doctors, counselors, teachers, preachers, etc., who are familiar with them, all reside. She points to the inconvenience and expense of having to bring witnesses and demand other evidence from North Carolina. The father, on the other hand, argues that the mother's move to North Carolina was voluntary and unilateral. He had nothing to do with or say about it. He points out that this is the original forum state where all litigation, including their divorce which adjudicated custody, has taken place; his substantial continuing contact with the children through his extensive visitation and otherwise; the fact that he and his new wife still reside here; the fact that the children's grandparents on both sides and other extended family members still reside here; that the children still have friends and acquaintances here; that all of them have substantial contact with the children when they are here for visits; while not saying so explicitly, he implies that the mother is guilty of "unclean hands" since she knows her superior resources will severely compromise his ability to relitigate the issues with her in North Carolina.

All of the arguments advanced by each side are pertinent and are well taken by the court. They present a close question for the court. Virginia maintains a favored position, under the Act, with a competing jurisdiction because it is the original forum. This being the case, North Carolina, as noted above, should continue to decline to exercise jurisdiction so long as the children have appreciable ties with Virginia. I wonder what more significant connection a child can have with an original forum state than that its biological father with whom it maintains regular, meaningful contact continues to reside there, not to mention paternal and maternal grandparents and other extended family members. The same substantial, relevant evidence pertaining to the children's health, education, development, and general welfare the mother now claims significantly connects them to their newly-acquired "home state" is still abundantly available or easily accessible in the father's original Virginia forum. Further, this court may require the testimony of essential out-of-state witnesses be addressed by depositions. § 20-141 of the Code.

Upon mature consideration, the court is of the opinion that the circumstances as a whole militate in favor of retaining jurisdiction in Virginia, the forum of original jurisdiction, and the court will so order.